United States District Court
Southern District of Texas
**ENTERED**
January 26, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAVID A. FAIRWEATHER and <br> HLARICE M. FAIRWEATHER, <br><br> Plaintiffs, <br><br> V. <br><br> AMEGY BANK, <br><br> Defendant. | § <br> § <br> § <br> § <br> § <br> § CIVIL ACTION NO. H-19-2799 <br> § <br> § <br> § <br> § |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge upon referral from the District Judge in this mortgage foreclose case is Defendant's Motion for Summary Judgment (Document No. 21). Having considered the motion, the absence of a response to the motion, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 21) be GRANTED.

### I. Background

This is a mortgage/foreclosure case, filed by Plaintiffs David A. and Hlarice M. Fairweather ("the Fairweathers") in state court on March 29, 2019, against Amegy Bank, the alleged current holder of the note on the real property located at 16418 Brook Forest Drive, Houston, Texas 77059 (referred to hereafter as "the Property"). The case was timely removed to this Court on the basis of diversity.

In the state court petition, which has not been amended following the removal of this case, the Fairweathers allege four claims against Amegy: for breach of contract; for violations of § 51.002 of the Texas Property Code; for violations of the Texas Debt Collection Act; and for negligence.

Those claims are generally based on the Fairweathers' allegations that Amegy, in seeking to foreclose on the Deed of Trust following their failure to make all the payments due on the note, has acted "in contravention of" the duties it owed to them, as well as the "covenants" governing the note. The Fairweathers also allege that Amegy was dilatory in considering their request for a loan modification, and failed to properly respond to their written requests for information and/or written disputes about their account balance. In all, however, it is the Fairweathers' complaint that Amegy posted the property for foreclosure despite their efforts to seek a loan modification and their efforts to dispute the amount that was due on the note that seems to form the basis of all of the Fairweathers' claims in this case.[1]

Amegy filed a Motion for Summary Judgment on all of the Fairweathers' claims. To this date, five months after the motion was filed, no response has been filed by the Fairweathers in opposition. As such, the Motion for Summary Judgment is ripe for ruling, and the summary judgment evidence submitted therewith is uncontroverted.

---

[1] The Fairweathers' allegations are broad, general, and non-specific. For example, while admitting that they experienced financial difficulties in 2017 and made timely payments on the note until January 2017, the Fairweathers allege, without any date reference, that they inquired about "loan workout alternatives to resolve any delinquencies," but were met with "dilatory tactics and repetitive requests from the Defendant which [ ] resulted in Plaintiffs being in jeopardy of losing their house and investment." The Fairweathers do not allege what those dilatory tactics were, nor do they allege how anything Amegy did violated any specific legal duty or covenant contained in either the note or the Deed of Trust. Similarly, with respect to the allegations about a Loss Mitigation Error letter they sent to Amegy, and the requirements of the Real Estate Settlement Procedures Act ("RESPA") that they be given notice prior to the assignment or transfer of the note, the Fairweathers do not allege how Amegy's response to the Loss Mitigation Error letter was improper or insufficient so as to support any of the claims alleged, and do not allege that they were not given notice when Amegy became the holder of the note.

## II.    Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[2] A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993)

---

[2] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

(citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

**III.     Discussion**

The summary judgment evidence shows that the Fairweathers, on April 15, 2004, obtained a loan in the amount of $359,100.00 from Mitchell Mortgage Company, LLC for purchase of the Property, and executed in connection therewith a "balloon note," and a Deed of Trust (Document Nos. 21-3 and 21-4). The note had a twenty year term, requiring the Fairweathers to make monthly payments of $1,982.97, and a lump sum payment of any remaining amount on May 1, 2024. (Document No. 21-3). By their own admissions in their pleading, the Fairweathers fell behind in their payments sometime in 2017. At the time they fell behind in their payments, Amegy, by merger with Mitchell Mortgage Company, LLC, was the holder of the note. *See* Declaration of Mathieu Davila (Document No. 21-2), Second Amended and Restated Articles of Organization (Document No. 21-4 at 21-22); December 12, 2017 forbearance plan extension letter (Document No. 21-6 at 64-65). On May 2, 2018, Amegy sent the Fairweathers a notice of default, indicating therein that the default was based on the Fairweathers' failure to make the monthly installment due on October 1, 2017. (Document No. 21-5). On December 5, 2018, counsel for the Fairweathers sent Amegy an "Error Resolution Notice," complaining about: (1) Amegy's failure to provide a reason for denying the Fairweathers' request for a loan modification; (2) Amegy's failure to "provide accurate information . . . for loss mitigation options and foreclosure;" (3) Amegy's failure to "provide an

4

accurate accounting of payments made into escrow concerning insurance and ad valorem payments . . . from Jan., 2017 to present;" and (4) Amegy's failure to "provide a specific reason or reasons for denial of all loan workout alternatives prior to accelerating their note with intent to post [the] home for foreclosure." (Document No. 1-3 at 23-24). Amegy responded to that letter on February 2, 2019, and provided copies of the Fairweathers' payment history and an escrow analysis (Document No. 21-6 at 1-65). A Notice of Acceleration and Notice of Foreclosure was thereafter provided to the Fairweathers on March 11, 2019 (Document No. 21-9). The Fairweathers filed suit in state court on March 29, 2019, seeking to enjoin the foreclosure, which was scheduled for April 2, 2019. Amegy now seeks summary judgment on all of the Fairweathers' claims.

    **A.**    **Breach of Contract Claim**

In their first claim, for breach of contract, the Fairweathers allege that:

> The actions of the Defendant Amegy Bank are in direct contravention of the above referenced mortgage note and Deed of Trust executed by the Plaintiffs on or about April 15, 2004 in that it owed them a legal duty per the mortgage contract and to fall [sic] to follow the specific covenants of the Note resulted in a breach of contract by the Defendant [ ].
>
> In the case at bar, all efforts by Plaintiffs were met with dilatory tactics employed by Defendant "Amegy" which led to arbitrary and capricious actions in posting the property for foreclosure and initiating eviction proceeding[s] to deprive Plaintiff[s] of their homestead.
>
> Further, Defendant "Amegy" has breached his obligation as the mortgage servicer of Plaintiffs [by] not adhering to the terms of their contract to stop all debt collection efforts including foreclosure until all of the Plaintiff's complaints[ ] challenging the debt (e.g. the servicing of his complaints per the loss mitigation error the servicing of their HAMP application by the Defendant[)].
>
> In the case at bar, Plaintiff and counsel for Plaintiff have met all of his contractual obligations to complete the "HAMP" application to secure a modification as required by the statute including providing all required financial information in a timely fashion.

5

> As a result, Defendant has breached the written contractual agreements and covenants of the note and the requirements pursuant to the Bureau of Consumer Financial Bureaus pursuant to 12 C.F.R. § 1024.39.

(Document No. 1-3 at 4-5) (paragraph numbering omitted).

Under Texas law, to state a claim for breach of contract, a Plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.,* 884 F.3d 239, 244 (5th Cir. 2018). The Fifth Circuit has held "a claim for breach of a note and deed of trust must identify the specific provision in the contract that was breached." *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 238 (5th Cir. 2014).

Here, the Fairweathers have not articulated which, if any, provision in the contract Amegy breached. Moreover, because the Fairweathers admit in their pleadings that they were behind on their loan payments, they cannot maintain a breach of contract claim against Amegy. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."); *see also Villareal v. Wells Fargo, N.A.*, 814 F.3d 763, 767 (5th Cir. 2016) ("A party to a contract who is ... in default cannot maintain a suit for its breach.") (quoting *Dobbins v. Redder*, 785 S.W.2d 377, 378 (Tex. 1990)). As for the Fairweathers' allegation that Amegy failed to comply with the provisions of Home Affordable Modification Program (HAMP), not only have the Fairweathers failed to come forth with any summary judgment in support of such a claim, it is well settled that a mortgagor cannot maintain a private cause of action based on HAMP or a defendant's non-compliance with HAMP. *Tierranegra*

*v. JPMC Specialty Mortgage LLC*, Civil Action No. 7:18-CV-347, 2019 WL 92190 *5 (S.D. Tex. Jan. 2, 2019); *Nolasco v. CitiMortgage, Inc.*, Civil Action No. H–12–1875, 2012 WL 3648414 *4 (S.D.Tex. Aug.23, 2012) (Miller, J.). Relatedly, a mortgagor cannot base a breach of contract claim on a mortgagor's failure to provide a loan modification and/or failure to comply with any provision of HAMP. *Bassie v. Bank of Am.*, N.A., No. 4:12-CV-00891, 2012 WL 6530482, at *3 (S.D. Tex. Dec. 13, 2012). Summary judgment is warranted on the Fairweathers' breach of contract claim.

### B. Texas Property Code Claim

In their second claim, for violations of section 51.002 of the Texas Property Code, the Fairweathers allege:

> . . . it is well established by statute that the mortgagee is required to (1) notify the mortgagor by certified mail that the Deed of Trust is in default and give him at least twenty (20) days to cure and/or to protest and (2) give [the] mortgagor at least twenty-one (21) days' notice of the sale by certified mail. See Tex. Prop. Code Ann. 51.0002(b)(3), (d).
>
> In the case at bar, Plaintiffs' mortgage loan including [the] Deed of Trust set out terms of default and acceleration in its covenants and as such when their received the notice of acceleration, they in fact did raise issues regarding his loan and payment history and pending loan workout alternatives as such until the disputes were resolved any notice to post their property for sale would be premature.

(Document No. 1-3 at 5).

A majority of Courts to consider the issue have concluded that § 51.002 of the Texas Property Code provides no private cause of action. *Penta v. Cenlar Capital Corp.*, No. 1:19-CV-0915-DAE, 2020 WL 7695831, at *3 (W.D. Tex. Dec. 28, 2020); Nelson v. Wells Fargo Bank, N.A., No. 4:17–CV–298–A, 2017 WL 3405525 * 2 (N.D. Tex. Aug, 7, 2017); *Solis v. U.S. Bank*, N.A., Civil Action No. H–16–00661, 2017 WL 4479959 *2 (S.D. Tex. June 27, 2017); *Palomino v. Wells Fargo Bank, N.A.*, Civil Action No. 6:15–CV–00375–RWS–KNM, 2017 WL

989300 *3 (E.D. Tex. Feb. 17, 2017); *Carey v. Wells Fargo Bank, N.A.*, Civil Action H–15–1666, 2016 WL 4246997 *3 (S.D. Tex. Aug. 11, 2016); *Reed v. Bank of America, N.A.*, Civil Action No. H–15–2005, 2015 WL 7736642 *4 (S.D. Tex. Nov. 30, 2015); *May v. Ocwen Loan Servicing, LLC*, No. 4:12–CV–581, 2014 WL 2586614 *4 n.2 (E.D. Tex. June 9, 2014); *Anderson v. CitiMortgage, Inc.*, No. 4:13–CV–369, 2014 WL 3983366 *5 (E.D. Tex. July 1, 2014); *Ashton v. BAC Home Loans Servicing, LP*, Civil Action No. 4:13–CV–810, 2013 WL 3807756 *4 (S.D. Tex. July 19, 2013); *Hill v. Wells Fargo Bank, N.A.*, No. V–12–11, 2012 WL 2065377 *7 (S.D. Tex. June 6, 2012); *see also Rucker v. Bank of America, N.A.*, 806 F.3d 828, 831 (5th Cir. 2015) (recognizing that District Courts that have considered the issue have "conclude[d] that Section 51.002(d) does not intend an independent private cause of action."). Instead, when a plaintiff asserts a claim under § 51.002 of the Texas Property Code based on improper notice, as is the case here, courts consider the claim to be one for wrongful foreclosure. *See Nelson*, 2017 WL 3405525 *2; *Solis*, 2017 WL 4479957 *2; *Palomino*, 2017 WL 989300 *3; *Carey*, 2016 WL 4246997 *3; *Ashton*, 2013 WL 3807756 *4.

Here, following the majority of the courts to have considered the issue, the undersigned concludes that Fairweathers' claim should be considered a wrongful foreclosure claim and, so considered, summary judgment is warranted on that claim. As set forth above, the summary judgment evidence shows that the Fairweathers were sent a notice of foreclosure on March 11, 2019, and that prior to the scheduled foreclosure they filed suit in state court. As there is no evidence in the record, whatsoever, that foreclosure has occurred, and no summary judgment evidence to controvert the summary judgment evidence provided by Amegy about the notice(s) it provided the Fairweathers, summary judgment is warranted on the Fairweathers' claim(s) under § 51.002 of the Texas Property Code.

8

## C. Texas Debt Collection Act Claim

In their third claim, for violations of the Texas Debt Collection Act, the Fairweathers allege that "they were harassed and subjected to emotional distress while Defendant attempted to collect the debt. Specifically, Defendant failed to timely respond to Plaintiffs' attempt to cure, to obtain a loan modification and to reconcile their escrow account as discussed above to finalize a short sale." (Document No. 1-3 at 6).

The TDCPA prohibits debt collectors from using various forms of threatening, coercive, harassing or abusive conduct to collect debts from consumers. See TEX. FIN. CODE ANN. §§ 392.301–392.306. The TDCPA defines "debt collector," in relevant part, as "a person who directly or indirectly engages in debt collection." TEX. FIN. CODE ANN. § 392.001(6) (West 2006). This can include "actions taken in foreclosing [on] real property." *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10–CV–2414–B, 2012 WL 555155, at *7 (N.D.Tex. Feb. 21, 2012) (citation omitted); *Swim v. Bank of Am.*, No. 3:11–CV–1240–M, 2012 WL 170758, at *5 (N.D.Tex. Jan. 20, 2012).

Here, the Fairweathers do not specify which specific provision of the TDCPA Amegy violated. In addition, their conclusory allegations in their pleading that they were harassed and suffered emotional distress do not state a plausible TDCPA claim, *Bassie*, 2012 WL 6530482 at *4, and there is, in any event, no summary judgment evidence in the record that the Fairweathers faced any harassment by Amegy. As for the Fairweathers' complaints about the loan modification process, such a process does not fall within the ambit of the TDCPA. *Thompson v. Bank of America*, 783 F.3d 1022, 1026 (5th Cir. 2015) ("Communications in connection with the renegotiation of a loan do not concern the collection of a debt but, instead, relate to its modification and thus they do not state a claim under Section 392.304(a)(19)"); *see also Denley v. Vericrest Fin., Inc.*, No. CIV.A.

9

H-12-992, 2012 WL 2368325, at *3 (S.D. Tex. June 21, 2012) ("A claim for harassment under § 392.302 does not include a lender's failure to respond to the borrower's cure attempts or its failure to provide modification alternatives."). With no summary judgment evidence in the record to support a viable TDCPA claim, Amegy is entitled to summary judgment on the Fairweathers' TDCPA claim.

### D. Negligence Claim

In their final claim, for negligence, the Fairweathers allege that:

> . . . based on the loan agreement, which specifically incorporated the regulations of the Department of Housing and Urban Development ("HUD"), the Defendants had a duty to mortgagors, such as themselves, to provide notice of any transfer, assignment or sale of the note, to properly manage the loan and escrow account, to comply with the notice provisions contained in the deed of trust before accelerating the note and foreclosing on the property, and, when applying for a mortgage modification, to protect their rights and not mislead them. As shown above, Defendant breached the duties it owed to Plaintiffs and as a result of this breach they were damaged.
>
> In addition, the Plaintiff is further protected by R.E.S.P.A., 12 USC Section 2601, et seq. Under the R.E.S.P.A., the Plaintiff has the right that before his loan is transferred, sold or assigned by "MERS" and that Plaintiffs must be given written notice to transfer and assignment, the mortgagor's rights are not to be compromised or affected and because of the failure between Mitchell Mortgage and Amegy transferring their file; this negligence has compromised their legal authority to foreclose on their home and demand that the foreclosure sale on April 1, 2014 be rescinded and any eviction proceeding be abated.

(Document No. 1-3 at 6).

Under Texas law, the economic-loss rule bars tort claims when the parties' relationship and their attendant duties arise from a contract. *See, e.g., Sharyland Water Supply Corp. v. City of Alton*, 354 S.W. 3d 407, 417 (Tex. 2011) ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."); *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W. 2d 493, 494–95 (Tex. 1991) ("if the defendant's conduct... would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract").

10

Here, that means that because the Fairweathers' negligence claim arises out of a contractual relationship, the Fairweathers cannot pursue a tort-based negligence action against Amegy. *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10–CV–2414, 2012 WL 555155, *5 (N.D.Tex. Feb.21, 2012); *Ellis v. PNC Bank*, N.A., Civ. No. H–11–3990, 2012 WL 2958266, *4 (S.D.Tex. July 19, 2012). In addition, with respect to the Fairweathers' references to RESPA (the Real Estate Settlement Procedures Act"), while RESPA does require that mortgagors be provided with notice when a mortgage loan is assigned, transferred or sold, 12 U.S.C. § 2605(b), the Fairweathers have come forth with no summary judgment evidence that they were not provided with notice that Amegy became the holder of the note upon its merger with the original lender. In addition, the Fairweathers have neither alleged nor come forth with any summary judgment evidence that they have suffered any actual damages associated with any alleged RESPA violation. "To recover against a lender or servicer that fails to comply with RESPA's requirements, the borrower must allege either (1) that actual damages resulted from the RESPA violations or (2) that the defendant engaged in a 'pattern or practice of noncompliance' entitling the Plaintiff to up to $2,000 in statutory damages." *Henry v. Carrington Mortg. Servs., LLC*, No. CV H-18-4414, 2019 WL 2491950, at *5 (S.D. Tex. June 14, 2019). Because there is no summary judgment evidence of a RESPA notice violation and no summary judgment evidence that the Fairweathers have suffered any damages, Amegy is entitled to summary judgment on the Fairweathers' negligence/RESPA claim(s) as well.

**IV.    Conclusion and Recommendation**

Based on the foregoing and the conclusion that the Fairwweathers' claims are not supported by any summary judgment evidence, and that the Fairweathers also cannot prevail, as a matter of

law on their claims for breach of contract, negligence, and violations of § 51.002 of the Texas Property Code, the Magistrate Judge

RECOMMENDS that Amegy's Motion for Summary Judgment (Document No. 21) be GRANTED, and that Plaintiffs' claims all be DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b). Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 26th day of January, 2021.

Frances H. Stacy
United States Magistrate Judge